IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT ANDREW WRIGHT,           )
                                )
          Plaintiff             )
                                )
v.                              )        NO. 2:20-cv-00516-SRW
                                )
KILOLO KIJAKAZI,[1]             )
Acting Commissioner of          )
Social Security,                )
                                )
          Defendant.            )

MEMORANDUM OPINION AND ORDER

I.      INTRODUCTION AND ADMINISTRATIVE PROCEEDINGS

        Plaintiff, Robert Andrew Wright, filed an application for Disability Insurance Benefits

("DIB") under Title II on July 25, 2017, alleging disability onset as of April 7, 2017, due to a

broken heel bone in both feet (crushed in right), problems walking, nerve damage, and tremors.

(Tr. 22, 64, 189).[2] Plaintiff's claims were denied at the initial level on October 6, 2017. (Tr. 22,

74). Plaintiff subsequently requested *de novo* review of his case by an administrative law judge

("ALJ"). (Tr. 22, 79-81, 96-97). The ALJ heard the case on April 16, 2019, and Plaintiff appeared

with counsel and gave testimony. (Tr. 22, 53-61). A vocational expert also testified. (Tr. 61). The

ALJ conducted a supplemental hearing on September 3, 2019, after Plaintiff underwent a

consultative examination. (Tr. 22, 36, 56, 61). Plaintiff again appeared with counsel and provided

testimony. (Tr. 22, 36-48). A vocational expert also testified. (Tr. 22, 49-51).  At the conclusion

---

[1]Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9,
2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the actual transcript pages are denoted by the abbreviation "Tr."

of the supplemental hearing, the ALJ took the matter under advisement until September 25, 2019, when the ALJ issued a written decision finding Plaintiff not disabled. (Tr. 22-31). That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since April 7, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: right ankle fracture, diabetes, chronic pain (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can climb ramps and stairs occasionally; never climb ladders, ropes or scaffolds; and balance, stoop, kneel, crouch and crawl occasionally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 26, 1966 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical- Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 7, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 24, 25, 30, 31).

On June 3, 2020, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5), thereby rendering that decision the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and to award benefits, or, alternatively, to remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1, at 2; Doc. 15, at 10. This case is ripe for review pursuant to 42 U.S.C. § 405(g). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 8, 9. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.    STANDARD OF REVIEW AND REGULATORY FRAMEWORK

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the

3

factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.   . . .   No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

*Id*.

## III.   ISSUE ON APPEAL

Plaintiff raises one issue on appeal, arguing that the ALJ improperly rejected portions of the medical opinion of Richard Meadows, M.D., a consultative examiner. (Doc. 15, at 3). The Commissioner maintains that the ALJ's decision is supported by substantial evidence. (Doc. 16, at 1).

## IV.   DISCUSSION

Plaintiff contends that the ALJ improperly rejected certain portions of Dr. Meadows's opinion without offering a sufficient rationale in support. (Doc. 15, at 3). Specifically, Plaintiff contends (1) that the ALJ improperly relied on Plaintiff's testimony as to his daily activities, (2) that Plaintiff had no current medical evidence to support his complaints of ankle pain, and (3) that Plaintiff was not taking any prescribed medications for his complaints of pain. (Doc. 15, at 4).

The Social Security Administration recently revised its regulations regarding the consideration of medical evidence, applying those revisions to all claims filed after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). Plaintiff filed her claim on October 19, 2017, (Tr. 20), so the revised regulations apply here. *See* 20 C.F.R. § 404.1520c. The revised regulations no longer use the term "treating source," but instead use the phrase "your medical source(s)" to refer to whichever medical sources a claimant chooses to use. *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790-RDP, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021). In evaluating claims filed March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*,

No. 8:20-CV-1650-SPF, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. §§ 404.1520c(a); 416.920c(a)). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)). "When a medical source provides one or more medical opinions or prior administrative medical findings, [the agency] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). The relationship with the claimant includes length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship. 20 C.F.R. § 404.1520c(c). "The most important factors . . . [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability . . . and consistency." 20 C.F.R. § 404.1520c(a); *Simon*, 2021 WL 4237618, at *3. "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. *See* 20 C.F.R. § 404.1520c(a)-(c). The ALJ may but is not required to explain how he considered the other remaining factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)(2)). The ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

The agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). State agency

medical or psychological consultants are considered experts in Social Security disability evaluation. *Hanisee v. Comm'r of Soc. Sec.*, 797 F. App'x 449, 450 (11th Cir. 2019); 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). However, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence . . . as appropriate." *Id.*

Additionally, in determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(a), 416.929(a). However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability. *Id.*; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Wimberley v. Berryhill*, No. CV 17-00558, 2019 WL 1418056, at *13 (S.D. Ala. Mar. 29, 2019) ("The ALJ is not required to accept a claimant's allegations of pain or other symptoms."). The regulations set out a two-step process for the evaluation of subjective complaints, such as pain. *Id.*; SSR 16-3p, 2017 WL 5180304, at *3. To establish a disability based on testimony of pain and other symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or pain, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms or pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3. "Consideration of a claimant's symptoms thus involves a two-step process, wherein the Commissioner first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Denny v. Kijakazi*, No. 8:20-CV-1573, 2022 WL 831901, at *7 (M.D. Fla. Mar. 21, 2022); 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, such as pain, is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work. SSR 16-3p, 2017 WL 5180304, at *3-4; 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); *Lopez v. Comm'r of Soc. Sec. Admin.*, No. 6:19-CV-00986, 2020 WL 6203876, at *6 (N.D. Ala. Oct. 22, 2020). In doing so, SSR 16-3p and the regulations require an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9. If the ALJ discredits Plaintiff's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).[5]

---

[5] In *Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841 (11th Cir. 2017) the Eleventh Circuit stated:

> SSR 16-3p rescinded the Social Security Administrations prior rule for subjective symptom evaluation, SSR 96-7p, to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will 'not assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'"

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a), 416.945(a). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503ORL18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations

---

*Id*. at 848; *Hartley v. Kijakazi*, No. 3:20-CV-1266, 2021 WL 5881671, at *3 (M.D. Fla. Dec. 13, 2021) ("'The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.'") (quoting *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original)); *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *14 n.14 (N.D. Ohio June 4, 2018), *report and recommendation adopted*, No. 1:17CV1118, 2018 WL 3093696 (N.D. Ohio June 22, 2018) ("While the court applies the new SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of the term is most logical. Furthermore, there is no indication that the voluminous case law discussing and applying the credibility or symptom analysis governed by SSR 96-7p has been invalidated by SSR 16-3p."); *Cook v. Comm'r of Soc. Sec.*, No. 1:19-CV-1068, 2020 WL 7253307, at *7 (S.D. Ohio Dec. 10, 2020), *report and recommendation adopted*, No. 1:19-CV-1068, 2021 WL 22522 (S.D. Ohio Jan. 4, 2021) ("The elimination of the word 'credibility' from SSR 16-3p is semantically awkward in applying prior case law, insofar as virtually all of the case law interpreting the former SSR 96-7p uses the catchphrase 'credibility determination.' Nevertheless, the essence of the regulatory framework remains unchanged. Therefore, courts agree that the prior case law remains fully applicable to the renamed 'consistency determination' under SSR 16-3p, with few exceptions.").

omitted). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not

necessary for the ALJ's assessment to be supported by the assessment of an examining or treating

physician." *Id*. at 1055-56. An ALJ "is not required to specifically address every aspect of an

opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913,

917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid

requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as

the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court . .

.] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation

omitted).

Here, assessing Plaintiff's RFC, the ALJ determined that Plaintiff had the RFC to perform

light work,[6] except that he could climb ramps and stairs occasionally; never climb ladders, ropes

or scaffolds; and balance, stoop, kneel, crouch, and crawl occasionally. (Tr. 25). In determining

Plaintiff's RFC, the ALJ discussed the medical record and noted that on April 7, 2017, Plaintiff

suffered fractures to both his feet in a car accident. (Tr. 26, 305-307, 311-370, 482-485). The ALJ

stated that on May 11, 2017, David Alford, M.D., performed surgery on the fractures. (Tr. 26, 286-

300, 527-1201). The ALJ noted that Plaintiff was precluded from bearing weight for several weeks

directly following the accident and surgery, but that Plaintiff progressed from two crutches to one,

and eventually to a compression boot by July 2017. (Tr. 26, 388). The ALJ also noted that records

from Dr. Alford showed that in July, August, and September 2017, Plaintiff continued to complain

of right lower extremity pain. (Tr. 26-27, 382-388). The ALJ reported that on September 26, 2017,

Plaintiff stated that he was taking Neurontin but the pain was no better and no worse, and that

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

Plaintiff described the pain as burning and stinging. (Tr. 27). The ALJ also reported that CT scan findings showed that the fracture had healed in satisfactory alignment position and that Dr. Alford believed that Plaintiff's symptoms were most likely nerve-related, assessing neuralgia/neuritis and referring Plaintiff to pain management. (Tr. 27, 382-84).

The ALJ stated that Plaintiff underwent a pain management evaluation with Michael Flanagan, M.D., in October 2017, at which Plaintiff complained of right foot pain. (Tr. 27, 429-433). The ALJ noted that Plaintiff reported that Mobic was minimally beneficial and Oxycodone was somewhat beneficial, and that he was currently taking Norco 10 with some benefit averaging once weekly, and Neurontin 300 mg twice daily with minimal benefit. (Tr. 27, 429-33). Plaintiff's physical examination showed that his spine was non-tender with free range of motion throughout; the straight leg raise ("SLR") was negative; his gait was antalgic and he used a walker; he had 5/5 strength in the left lower extremity with no tenderness; and in the right lower extremity he had 5/5 strength, although he had sensory abnormalities, edema, and decreased range of motion. (Tr. 27, 429-433). The ALJ said that Dr. Flanagan assessed Plaintiff with possible to probable right foot complex regional pain syndrome ("CRPS") and a BMI of 29.7. (Tr. 27, 429-433). The ALJ further noted that Dr. Flanagan recommended weight loss and home exercise to reduce the axial load on the skeleton and joints, stating that exercise would also help promote pain reduction through conditioning, and generalized and core strengthening and endurance, and Dr. Flanagan recommended that Plaintiff build up to walking or water therapy 30 minutes per day, and a minimum of 10,000 steps per day. (Tr. 27, 429-433). Dr. Flanagan referred Plaintiff to physical therapy for evaluation and treatment of the right foot CPRS to include gait training and desensitization therapy. (Tr. 27, 429-433). The ALJ reported that Dr. Flanagan also gave Plaintiff a trial of alpha lipoic acid for neuropathic pain. (Tr. 27, 429-433).

The ALJ commented that Plaintiff went to eight physical therapy visits from October to

November 2017 and that, at his initial visit, it was noted that Plaintiff's inpatient rehabilitation improved mobility and strength but that he continued to have limitations with walking and significant hypersensitivity. (Tr. 27, 500-525). The ALJ noted that at the last visit, Plaintiff reported no change in his symptoms since the initial visit and that he reported no decreased hypersensitivity in his right foot. (Tr. 27). Plaintiff had not made a follow-up appointment with Dr. Flanagan and was encouraged to do so (Tr. 27, 500).

The ALJ stated that on May 7, 2019, Plaintiff underwent a post-hearing consultative orthopedic exam with Richard Meadows, D.O., at which Plaintiff complained of bilateral foot pain, right worse than left; right sided neck and shoulder pain; left hip pain; and tremor that worsened with age. (Tr. 28, 1211-12). The ALJ noted that the thoracic spine x-rays taken at the consultative examination were normal; that degenerative changes were noted in the lumbar spine; that the physical examination noted a BMI of 29.56; that Plaintiff had no lumbar pain to palpation and a negative SLR; that the cervical spine had good range of motion with some pain with extension and with side bending, but no paresthesia; that Plaintiff had full range of motion and strength bilaterally in the upper extremities and grip strength with no paresthesias; that Plaintiff had 5/5 strength in the lower extremities and his knee ligaments were intact with no effusion; and that Plaintiff had full range of motion throughout, except in the right ankle. (Tr. 28, 1211-12). Plaintiff's right ankle had pain with palpation and was swollen, while his left ankle had mild pain but full range of motion. (Tr. 28). The ALJ noted that Plaintiff could tandem walk with his cane for 10 feet but could not heel or toe walk due to pain in the right foot/ankle. (Tr. 28, 1211-12). Dr. Meadows completed a Medical Source Statement ("MSS") form, and found that Plaintiff could do the following:

> lift 20 pounds frequently and 50 pounds occasionally; carry up to 20 pounds frequently; sit for 4 hours at a time, for up to 6 hours per day; stand 1 hour at a time, up to 1 hour per day; walk 1 hour at a time, for up to 1 hour per day; does not require a cane to ambulate, but uses it for balance; reach, handle, finger and feel frequently;

13

> push/pull with the hands occasionally; operate foot controls occasionally on the left, never on the right; never climb ladders/scaffolds or crouch; occasionally climb stairs/ramps, balance, stoop, kneel, or crawl; never be exposed to unprotected heights; occasionally be exposed to moving mechanical parts.

(Tr. 28, 1205-10).

As to determining Plaintiff's RFC based consideration of the entire record, the ALJ explained as follows:

> This finding is supported by the medical evidence of record, which shows ankle fractures as a result of the car accident and he underwent right ankle surgery and continued to complain of neuropathic pain. The physical exams showed pain with attempted subtalar motion, hypersensitivity on the right foot, right ankle pain with palpation, swelling in the right foot, and antalgic gait. The residual functional capacity can also account for the degenerative changes noted on spinal x-rays at Exhibits 5F and 14F, but the physical exams are generally normal and no treatment has been recommended.

> No greater limitations are warranted, as the claimant's pain was managed with appropriated dosages of opioid medication and Neurontin in the months following his injury. The CT from August 2017 shows the fracture had substantially improved and healed 3 months after the surgery. Although the claimant continued to experience pain requiring a pain management evaluation in October 2017, he did not exhibit significant muscle weakness. Dr. Flanagan also noted the claimant used a walker and had an antalgic gait at the pain management evaluation. However, he recommended the claimant start an exercise program. (Exhibit 8F). Dr. Bush's treatment notes through April 2018 note intact sensation in the extremities. Dr. Bush also recommended the claimant exercise regularly. (Exhibit 10F). The record does not support a work related limitation in conjunction with his use of ambulatory assistive devices after his surgery. The postural limitations in the residual functional capacity can account for any gait/balance issues. The claimant testified that he now walks a mile a day and rides his bicycle for exercise.

> The claimant testified that he has no family doctor and has had no medical treatment in the past two years other than at the ER due to lack of insurance. He is taking no prescription medications for his pain and only takes over the counter medications. He has a valid driver's license. The record includes one ER for chest pain and high blood pressure on June 13, 2019. He did not report the previously noted complaints about his ankle and pain. He had normal range of motion in the spine. He underwent workup, and was later noted to state he felt "much better," was not anxious, and was calm and relaxed. The claimant was given a Nitroglycerin, which made his pain go away. The EKG showed normal sinus rhythm. (Exhibit 15F).

> The claimant's diabetes mellitus is a severe impairment because elevations of blood sugar have been documented in lab studies. However, the claimant's diabetes mellitus has been shown to respond well to conservative management without

14

> medication. The record contains no indication of any complications such as diabetic peripheral neuropathy or retinopathy. His blood sugar has been relatively stable. The limitation to a reduced range of light work, including the postural limitations described above, account for the claimant's diabetes. No greater limitations are necessary, as the neurological exams were generally normal and he has managed his blood sugar mostly with dietary changes. (Exhibit 10F).

(Tr. 29).

> In Evaluating the opinion evidence, the ALJ found the following:

> In October 2017, George Hall, M.D., found the claimant would be capable of performing light work 12 months after onset (April 6, 2018). (Exhibit 1A). This finding is persuasive as to the exertional level, but the undersigned also included postural limitations to address the claimant's ongoing complaints of neuropathic pain in the right lower extremity.

> Dr. Meadows' orthopedic consultative exam is somewhat persuasive. The undersigned adopted his MSS limitations that are consistent with light work, but do not find the hourly limitations or the use of a cane persuasive since the claimant testified to walking and riding his bicycle. Moreover, the claimant has no current medical evidence to support his complaints of ankle pain and is taking no prescription medications for his complaints of pain.

(Tr. 29-30).

Applying the revised regulations, the court finds that substantial evidence supports the ALJ's rejection of portions of Dr. Meadows's MSS. The record, as cited by the ALJ, showed that Plaintiff's musculoskeletal examination was generally normal except for the right ankle, which had swelling and pain with palpation and did not have full range of motion. (Tr. 27, 28). However, Plaintiff had full strength in the lower extremities. (Tr. 27, 28, 1204). Although Dr. Meadows noted that Plaintiff used a cane to tandem walk 10 feet but could not heel or toe walk due to pain in the right foot/ankle, Dr. Meadows concluded that the cane was not required for him to ambulate. (Tr. 28). As to the swelling in Plaintiff's right ankle's supporting the limitation on standing, walking, or sitting, Plaintiff testified that he walks a mile a day and rides his bicycle for exercise. (Tr. 29). The ALJ also noted that at his ER visit Plaintiff made no mention of ankle pain. (Tr. 29).

Plaintiff argues that it is "difficult to see how the examination by, and findings of, Dr.

15

Meadows do not qualify as 'current medical evidence' which support Mr. Wright's 'complaints of ankle pain.' Moreover, the ALJ's decision to order such an examination goes to its probative value as to Mr. Wright's conditions and limitations, and is inconsistent with the ALJ's subsequent position that the record contains no supportive evidence." (Doc. 15, at 7). The ALJ noted that Plaintiff had not had any medical treatment in the past two years, other than at the ER, due to a lack of insurance. (Tr. 29). As a result, a consultative examination was ordered to provide objective evidence regarding Plaintiff's impairment. (Tr. 28, 56). Given the reasons, as discussed above, for discounting portions of Dr. Meadows's opinion, the ALJ properly found that there was no current medical evidence to support Dr. Meadows's opinion. In evaluating the persuasiveness of Dr. Meadows's opinion, the ALJ considered the supportability and consistency of that opinion with the other medical evidence in the record. Here, Plaintiff failed to present other medical evidence supporting Dr. Meadows's opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

As to Plaintiff's argument against the ALJ's considering Plaintiff's activities of daily living in evaluating the persuasiveness of Dr. Meadows's opinion, these activities, which included biking and walking a mile a day for exercise, were properly noted in assessing the consistency of Dr. Meadows's limitations.[7] S*ee* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of her impairments);

---

[7] To the extent that Plaintiff complains that the ALJ was "silent" on some of his additional testimony and/or subjective complaints, (Doc. 15, at 6), an ALJ is not required to refer specifically to every piece of evidence in the record. *Coley*, 771 F. App'x at 917 (An ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record."). Here, the ALJ summarized Plaintiff's main complaints of symptoms and hearing testimony in determining that his allegations were not entirely consistent with the other evidence of record. (Tr. 25-26, 46-47).

*Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) ("Although a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability, that does not mean it is improper for the ALJ to consider a claimant's daily activities at all.") (internal citation omitted); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (stating that an ALJ should consider a claimant's daily activities in evaluating the limiting effects of her impairments).[8] Further, the court notes that the record also reflects that medical providers— Dr. Bush, who recommended to Plaintiff that he exercise regularly, and Dr. Flanagan, who told Plaintiff to start walking up to 10,000 steps per day in addition to doing water therapy—encouraged Plaintiff to exercise, which is evidence of their opinions that Plaintiff was capable of this exercise. (Tr. 27, 29).

Lastly, Plaintiff objects to the ALJ's consideration of evidence that Plaintiff was not taking any prescription medication. (Doc. 15, at 8). Plaintiff contends that "[w]hen a claimant cannot afford the prescribed treatment and can find no way to obtain it, he or she is excused from noncompliance." *Id*. However, the issue here is not one of noncompliance. It was proper for the ALJ to consider whether Plaintiff was taking prescription medication in evaluating the intensity and persistence of a claimant's symptoms, such as pain. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). The ALJ noted that Plaintiff was not taking prescription medications for pain, but only took over-the-counter medications. (Tr. 29). The ALJ also noted that at the hearing Plaintiff stated that he had been treating at the ER and gets blood pressure medications from the ER, although the record reflected that Plaintiff did not complain of ankle pain while there. (Tr. 26, 29). The court also notes that at the hearing Plaintiff testified that he occasionally took over-the-

---

[8] Plaintiff cites several cases that are inapplicable to the facts here, as those cases either addressed unique characteristics dealing with mental disorders, meeting the durational requirement, or applying the old regulations pertaining to physician hierarchy. (Doc. 15, at 5-6). Moreover, Plaintiff does not cite any objective factual evidence supporting any assertion that his ankle impairment was "episodic" in nature.

counter medications. (Tr. 42). The court finds that the ALJ properly considered the fact that Plaintiff did not take prescription medication as one factor in the ALJ's consideration of the entire record.

In sum, the record reflects that the ALJ considered the entire record in rejecting or discounting portions of Dr. Meadows's opinion, and the court finds that substantial evidence supports the ALJ's conclusion. *Mitchell*, 771 F.3d at 782 ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

## V.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED.  A separate judgment will issue.

DONE, on this the 31st day of March, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge

18